We'll call the first case to be argued today. Parker v. Bill Nelson Trucking. Yes, sir. May I please record? For purposes of the first issue, there are two things that are clearly established in the record. Number one is that the trailer and the load that was on the Bill Melton tractor at the time severely impacted Ms. Brianna Parker's automobile. It severely impacted the hood, the side, and it punctured her automobile, and it caused a total loss of her car, the tractor, the trailer, and the three forklifts that were on the load or part of the load. And the second thing is that her treating physicians all testified that her injuries and her discomfort was permanent. So the first issue—Oh, go ahead. The first issue, Your Honors, is that the court erred when it denied judgment as a matter of law on the future medical expenses. Well—Go ahead. My question is it's hard to tell because the court did not segregate the damages by type as would have been done in Texas court and required in Texas court, so it's hard to see if there were no damages made for future meds. We don't know if $110,000 includes future meds or not, do we? Well, we know it doesn't include the undisputed amount of future medicals, which was over $1 million. So we know for sure that it does not include, again, the undisputed evidence of what those costs would have been. But you're correct. We don't know whether— They might have given $5 for that. I mean, I'm not saying that your client believes that would be anywhere in the ballpark, but we don't know whether they gave or not. And I'm wondering, this would be error in Texas law to not give blanks for all the damages when you've made a timely objection, as you did. But is it error in the federal court trying a case under Texas law? And do you have a case that says it is? Your Honor, the cases that we're relying on for the failure to provide judgment as a matter of law, that's the Dawson case. Again, just the basic proposition of law that says that when the evidence points so strongly and overwhelmingly in favor of one party, that reasonable persons could not arrive at a contrary conclusion. And so, again, the evidence is that Ms. Parker's treating physicians all gave testimony that her damages are permanent. They gave specific costs for those damages. Dr. Noznick is a reputable neurologist. He testified that she suffered traumatic brain injury and that he testified about the cost of her therapy. Dr. Willis was her pain management physician. He's a diplomat at the American Academy of Pain Management. He treated her for over a year and a half, and he testified. I mean, I have had this problem before as a state trial judge where they gave zero for pain and suffering on a torn rotator cuff. And I was granting a new trial, and the parties went out in the hall and gave an additure. So I understand the problem if you give a zero when the undisputed medical and the undisputed shows that there is actually some number. But the problem here is where the damages are not segregated. We don't have them itemized that we don't know whether they gave something or not. And so I'm wondering, you talked about the judgment as a matter of law. I asked you about the jury charge. Is there a case that says they have to do a more appropriate Texas pattern jury charge on damages? Do you know of any law of that? I was looking for it myself. I'm not aware of anything that says that, Your Honor. Now, along that line, defendants contend that you failed to raise this issue in a proper Rule 50A motion. And under our rule, where you're challenging the sufficiency of the evidence, the issue is waived. And I want you to address that. Yes, Your Honor. As the Court is aware, in Scottish Heritable v. Pete Murray, it says that Rule 50B excuses technical noncompliance. And it identifies two basic purposes for that rule. And it says that the two purposes are to enable the trial court to reexamine the question of evidentiary insufficiency as a matter of law and also to alert the opposing party to the insufficiency before the case is submitted to a jury. Now, Your Honor, the record shows that the defendants were alerted to the insufficiency of expert testimony on future medical expenses when we objected to their medical experts having any opinion or issuing any opinion at trial other than what they testified about in their expert reports. Their expert reports were limited to whether the past medical expenses were reasonable and necessary. That's what their reports were limited to. So they were notified then when we went to the trial court and we said we don't want them to testify about anything else. In other words, we don't want them to testify about future medical expenses. Wait. So you did that in a motion in limine? Correct, Your Honor. All right. We're talking about a Rule 50A motion at the close of your evidence. Yes, Your Honor. At the close of the evidence, we made a Rule 50 motion as to liability. Right. If that motion, of course, had been granted, then we would have moved for damages, the undisputed damages, both as to the past medical as well as the future medical. So since that rule was not granted, we never got to the second step, which would have been now that there is a liability finding, then it comes with that a finding as to damages. Turning again to the charge, is there a part of the charge that was left, a type of damages, that was not included in the instructions because of the different format that the district court chose? Are you arguing that when the court combined them in the list, they left out one of the kinds that should have been there? That's not the argument. Okay. That's not the argument. The argument, again, Your Honor, is if, you know, as Your Honor pointed out, in Texas law when you require it, when you allow it to be separate, and it's also in the Texas Civil Procedure Guideline that says it should be separate. Economic damages should be separate. And that's for purposes of, you know, being able to measure whether there's exemplary damages. On the RTP, the responsible third party, you're not objecting that in federal court you shouldn't do the RTP, are you? You objected of the timeliness. Is that your only argument? Is that correct? You didn't argue that that's procedural or substantive and we didn't have that discussion? Correct. Okay. So, again, on the future medical expenses, there was simply no disputed testimony. In fact, the defendant's expert testified that the care that was provided to Ms. Parker was reasonable and necessary. That's Dr. McMaster. Another of their experts, Dr. Price, testified that he saw absolutely no evidence that the plaintiff was faking or exaggerating her injuries, and that's in the record on page 3031. So, again, under Rule 59E, when the evidence is undisputed, the court should modify the jury's verdict to correct manifest error of law. And in this case, granting a judgment as a matter of law on the undisputed medical expenses would have been the appropriate thing to do. Now, on DAR and Triple E that were dismissed, you're contending there was spoliation of the evidence in all sorts of claims, attorney misconduct. I've never seen so many attorney misconduct claims, and that's questionable. What sort of discovery did you do prior to the dismissal of DAR and Triple E to show that you were entitled to sanctions or anything of that nature? Yes. Your Honor, to begin with, a couple of weeks after the accident, we submitted a preservation of evidence letter to the defendants. Right. I'm aware of that. But I'm asking you, what discovery did you do by way of interrogatories, admission requests, depositions? What discovery did you take? Correct. Well, we didn't take any depositions because the owner of the trucking company and the truck driver both died. So we didn't take any discovery of those people. We tried to get a corporate rep deposition. It was never – there was no one there. So – but in terms of the interrogatories – because of this, that, and the other, did you do anything of that nature? Well, we submitted – to answer your question, yes. We submitted interrogatories, requests for production, requests for admission. A lot of those were not answered. They objected to it, and they said they object because there's no one available at the company who can answer these questions. We filed a motion to compel with the court. The court sat on it for over a year. Then the court finally ruled on it and ruled that they are to produce that information. Unfortunately, the production would have come after the trial. So by the time they got to the motion to compel, it was – What did you do when, in your words, the court, quote, sat on it, close quote? What did you do to get a ruling from the court, knowing the time pressures? Well, we asked for a ruling from the court. Well, did you follow up on that? Yes. Tell me how you followed up. The court referred – we mentioned to the court that there was no ruling on that, and the court referred – we had a pretrial conference, and the court said that matter will refer to the magistrate, and the magistrate finally issued a ruling on it. But again, at the time, it was the response to those – discovery would have come a month after the trial. Does Texas law allow for equitable tolling? It does, Your Honor. So the question here was whether it was concealed or not. My question, I simply ask you, does Texas have equitable tolling like in the federal courts? Yes. So are you applying Texas law then? Because this is a diversity action. Are you applying Texas law for this equitable tolling claim? We think it should have been tolled either under federal law or Texas law, because, again, you have a clear instance where we tried to get the information, we tried to get the identity of the load carrier, and that information was not supplied to us. It wasn't supplied to us in the interrogatories. We didn't find out about that until 2016, long after the statute of limitation had expired. And, Your Honor, as far as the new trial, again, we think there are several different grounds. One ground is that because the jury, you know, under Texas law, once liability is established, the jury must award some amount for every element of damages that is proven, objectively proven. And, again, we believe that if you look at all the damages for past lost wages, future lost wages, pain and suffering, counseling and emotional distress, we believe that all those damages were proven at trial, and we believe that because of the misconduct of counsel and the introduction of the attorney. Did you ever object to the, quote, misconduct of counsel, close quote, which you say took place repeatedly during this four-day trial? Your Honor, some of it we did. On the, for instance, when they talked about medical insurance, we made an objection to it. Of course, it was too late at that time. The question came out. The witness said, yes, I have medical insurance. And just as we were objecting to it, the evidence was already out. In terms of all the other allegations that the defendants were making that this was a lawsuit that was initiated and perpetrated by counsel, those things just came out suddenly and unexpectedly. When it came out, we were left with a couple of options, neither of which is attractive. One is to ask to strike the information, in which case it draws more attention to the jury. The other case is ask for a mistrial, in which case we'd have to try the case all over again, and we'd already been, you know, waiting for trial for a couple of years since her injury. Yeah, but that's a difficult spot. But I agree with you that they shouldn't be talking about medical insurance and they shouldn't be talking about the financing of the medical care. Those were two things that are totally out of bounds to be talking about, and they know better, they're experienced lawyers. But the part to say that the case is driven by the lawyer, isn't that fair game in PI work, that the person's not really hurt and it's driven and it's just, you know, it's a soft-tissue case? That's a common defense strategy, isn't it, in Texas court on soft-tissue cases? I'm sure your client could get very angry about it because she has all these doctors and actual conditions, according to some of the evidence. But that's not an abnormal strategy, and I don't think it's barred by the Texas rules in any way, is it? Well, Your Honor, absolutely it is. It's also barred by this court. If Your Honor will recall, one of the cases we cited, Buffert v. Rowan County, or Rowan Companies rather, 994 F. 2nd 155, that was a similar situation where the counsel was saying that the plaintiff was exaggerating her injuries. And that didn't even get into the realm of what we're talking about now, where they're saying it was driven by counsel. But in that case, there was no evidence of that. And again, if you look at the testimony from the defendant's own expert, their own expert said that he saw nothing to indicate that she was exaggerating her injuries. That was from their medical expert who reviewed her medical records, who listened to her testimony at trial. Right, and the jury got to hear that. So they got to hear that they're on thin ice saying that it's lawyer-driven when the expert says that it's not lawyer-driven, that she really does have all these injuries. Your Honor, if you say it 20 times that it was driven by the lawyers, and if you say it that it was paid for by the lawyers, and if you say that she's got medical insurance 20 times, then I would suggest that the jury could be impacted by that. And again, the plaintiff's- Or it can backfire moderately. It could have. Lawyers, I mean, jurors as a whole do not like lawyers criticizing other lawyers at trial. That's one of the most popular things they say. So it could backfire. It's a dangerous strategy. You would think, Your Honor, but, you know, unfortunately, in this case, it appears that it did not. Because of the number of comments, again, that were made, it appears that it did not. Thank you. Thank you. May it please the court, counsel, I'm Wade Krosno, and I represent the appellees Bill Melton-Trucking and the estate of Charles Thacker. Jad Masso, who is counsel for Dahr Equipment Company, will be arguing for the other two appellees and has reserved five minutes of our time. Before responding to some of the specific issues that have been raised this morning, I have a few general observations about the appellate complaints that I believe collectively resolve all of them or should resolve all of them. The first is that the sheer number of complaints being made is a sure sign that there is not one good one. The second point is that there are- We don't know that until we go through them all, counsel. And so let's go through one that might be a good one. Let's talk about the failure of the court to give the damage blanks. Are you the person in the transcripts? I can't remember if you are or not. I was not at trial. I'm not at trial. Yeah, you weren't at trial. It wasn't just plaintiff's counsel that objected to the failure to give the damage blanks. Defense counsel said, Judge, this is totally wrong, and went through, you've got to have separate for middle anguish and you shouldn't have for the hedonistic damages.  There's both the written objections from plaintiff's counsel and there are objections from defense counsel that this charge is wrong under Texas law. And we're here with the problem about whether every category of damages was awarded, and both of you agree that the judge charged it wrong. So my question is, what says that we should ignore that and just move on down the road? Your Honor, and I apologize for this because when I read through the trial transcripts, I did not see the passage you're referring to, and I'll be happy to take a look back at it and address that. What do you mean? You don't believe that your trial counsel made an argument that the charge was wrong? Is that what you're saying? No, I'm not saying that. I'm saying I missed that in the trial transcript and that could have been my mistake. What I saw in the trial transcript was that... On page 31 of the 43, it says you should consider the following evidence of damages, and then there's something about hedonistic damages. It says, Question 4, we believe each of these should be separated out. They should be separate. This is your trial counsel saying separate for mental anguish, separate for actual damage, so forth. It doesn't track the Texas pattern jury charge. The Civil Practice and Remedy Code states there must be a separate category or separate element here for actual damage, and that's not here. And it's interesting because the judge is trying to move the counsel along because the counsel is going on and he's got the jury ready to come in for, you know, what I'm talking about. And counsel keeps on and on making these objections because the judge apparently wanted them in writing and said, and that's what plaintiff's counsel did. But defense counsel did what's their right by making these on-the-record objections, and so they make the exact same objections. So both of you objected to the charge. I'm asking as a legal matter, does it matter that this charge does not conform on damages to Texas law, or is that a matter of federal, because it's in federal court, does it have to? What's the legal answer to the question? I'm not aware of any federal cases saying that in federal court in a diversity case you have to do that. And I apologize because I was thinking you were referring to whether plaintiff's counsel objected. On the record, I don't. I think they relied on their written objections. Which is what the judge told them they could. The judge said, and I accept those as being timely and appropriate, and I know that you're making them. And they're in the plaintiff's written version, the exact same objection. That's right. Well, I will say that I did not see where they made a specific objection that you have to have separate answer blanks. What I saw is that they made some objections and then says, here's what we think, you know, here's a proposed alternative question. And I'm not sure that's enough under the court's precedent to preserve error. Plaintiff objects to defendant's proposed three. It does not track Texas law. It does not address all areas of plaintiff's injuries. Plaintiff submits the following questions, which are an accurate statement of the law as applied to facts. And it's got the same damage blanks. They're the Texas PJC, which is the same thing that defense lawyer relied upon in its objection. They're exactly the same. And I'm not sure that that is enough to . . . Well, summa arguendo, it is. Because that's what the district court said it wanted, was not an on the record, go through it again while the jury's in the hall. The district court said, no, I want to have this in writing. Let's move along. And so what is the answer legally to the question? Well, under the federal case law, they haven't cited any case law saying that you have to have separate answer blanks in federal court. If we were in Texas court, do you agree that this would be reversible error? Both sides asked for it. It's not done. And they argue that they didn't award for it. They must not have awarded for a category because it's so low. Well, it depends on what the evidence is at trial and whether you can establish harmful error. And here the evidence was such that there was, although there may have been evidence to support the damages award they want, the evidence was not undisputed. And if the jury believed our evidence and cross-examination of their expert witnesses, an award of zero damages would have been justified. On future meds or on any other category? On future meds. They had about $57,000 in past meds, and then they had I think about $10,000 to $12,000 in past lost earnings. And the jury could have well looked at this. As you noted, they may have given her some future medical expenses, but they may have. They may not have. We don't know. What did your experts say about where do your experts say that zero, do they say zero or do they say there could be some? What they said is our expert, Dr. McMaster, was one of them. And he said that some, the initial chiropractic evaluation and some of the initial treatment was reasonable, but the rest was not. That's future? Future anticipated? Well, it would have been future because he was talking about at a certain point that had already occurred before trial, the treatment beyond that was not reasonable. But he's saying future? You mean it's past? No, he's saying that at some point before trial, there became a point where further treatment was not reasonable. And so that would apply necessarily to future damages because you're looking forward at the time of trial. He said further treatment's not reasonable. Yes. Where is that in the record? And that was at volume three, page 120 of the record. Dr. Price, who was a psychologist, testified. She testified specifically about an allegation that there was lower brain functioning that was caused by depression, and she disagreed with that. That was at volume three at page 130. But the other evidence that was brought into play on the future medical expenses was in the cross-examination of the plaintiff's experts or their treating physicians and psychologists who testified at trial. I'm sorry, so did Dr. Price, is it your position that Dr. Price said no future meds are necessary? No, she was just talking about she didn't think there was a permanent brain injury, which I think goes to some extent to past and future. Using, I suppose, disability terminology, you're saying that your expert said she had reached full medical recovery. Right. I think that's correct. But the other key piece of evidence on future medical expenses is the cross-examination of the medical experts, the treating physicians, and psychologists who testified for the plaintiff at trial. I know there's a dispute about this in the brief, but their witnesses who testified at trial indicated that she was not treated by them after 2014, which was more than two years before trial. And that comes in in the testimony of Dr. Willis, volume two at page 17, volume three at pages 16 and 23, I think Dr. Noswak, and transcript volume three at 40, that was the testimony of their chiropractic expert, Dr. Hardy. So based on that, the jury could have looked at this, and they observed Ms. Parker at trial too, and could have taken into account that she was back to work full-time, that she drove away from the accident scene, and could have taken all that into account and determined that no medical expenses were, no future medical expenses were necessary. But again, they may have given her something. We don't know what they did. You've only got four minutes left, and I would like for you to address the question I asked plaintiff's counsel about this claim that there was a failure to make a proper objection under Rule 50A about future medical expenses. And I'm having a little problem with that because normally you don't know what's going to be awarded for future medical expenses until after the jury returns a verdict. So what was the necessity for making some sort of objection at the close of plaintiff's case under Rule 50A? Well, that's a good question, Your Honor. The purpose of the Rule 50B motion is to say this evidence is so undisputed or established as a matter of law that it shouldn't even be submitted to the jury. You said 50B. I was asking about 50A. You're right, 50A. There was no Rule 50A motion to alert the district court to the fact that the evidence was supposedly undisputed. As I've just gone through, the evidence was not undisputed. And so we think even on something like future meds, of course, you never know what the jury is going to find on anything, damages or negligence. And it is very rare that you have situations where medical expenses or at least future medical expenses are undisputed and proven as a matter of law. So we believe they were required to call that issue to the district courts. What issue? The issue, the claim that the future medical expenses were essentially established as a matter of law and should not have been submitted to the jury. All right. That's a totally separate argument on appeal from the jury charges wrong on future meds. Yes, I agree with you. It is. But you have the same ultimate problem of showing harm on all of these issues. When you do have a jury finding of liability, you do have a jury award of a six-figure sum of damages that's not what they wanted but is within the realm of the evidence that was presented to the jury. And back on the issue, and there is also a question, we think, about whether it was preserved or not. Well, I found the judge specifically said he considered it preserved. He says that, but I don't need to read that to you. And I don't quarrel with you that that was the procedure the judge ordered. And I'm not saying that there is a specific written objection in the objections they filed that that would not have counted. I just question whether it is what they did was specific enough, just proposing an alternate question. Well, if y'all objected on it, can't he rely on that? I don't think so. I mean, as a defense counsel, I know what I always want. You want to all adopt the objection. As defense counsel, we typically want separate answer blanks. The plaintiff's counsel never does, only it turns out in retrospect that they do in this case because they think it would help them to establish harm. You concede that these were misstatements at trial about medical insurance and about the lawyers paying for the medicals, don't you? On the issue of medical insurance, that came in. It was a one-time statement. It was a mistake. It should not have been made, right? It was a mistake, but it was a one-time statement that was not repeated or emphasized. And, again, you do have an award of damages that occurred here. So it's not a situation where the jury found no liability and no damages. I see my time is up, and I don't want to eat into counsel's time. Should I respond to the rest of it? It's okay. Okay. The second part of the question was about attacks or statements about opposing counsel. This was a personal injury case. This is a pretty common tactic that you see of questioning whether the damages were exaggerated and whether counsel was involved in referring to doctors and things of that nature. But you're not supposed to say letters of protection. But we didn't say that. That was said by one of their witnesses raised the whole issue about letters of protection. There was some subsequent discussion of it that was not objected to. Thank you, sir. Thank you. Mr. Masso? Good morning, Your Honors. Jad Masso on behalf of DAR Equipment and Triple E Brokerage. With regard to the equitable tolling of limitations, there are two important elements, and Judge Barksdale had a good question during Plaintiff's argument about one of those elements, which is the diligence that plaintiff undertook to find out who the correct defendants were. And so I want to talk about that one briefly first, and then I'm happy to take any questions, of course, at any time. The plaintiff did not undertake any discovery in this case whatsoever until the 11th hour. The limitations period is two years. They filed this suit exactly one year and 11 months after the accident, and not until then did they undertake any discovery. There was, I believe, a request for disclosure that was served with the lawsuit, but even though the lawsuit was filed within a month of the close of the limitations period, the lawsuit wasn't served for a couple of months after that. So there was no diligence. Even if they had served their interrogatories, request for productions, request for admission, all of that came after limitations had already expired, and so it is impossible to say that they undertook any effort, legally speaking, to discover the identity of any other parties before limitations was already gone. But, of course, diligence only matters if they can actually fit the merits of any of these theories, which they can't. The district court went right through their pleadings, just as we have done in our briefs, and looked at the fact that the theories don't fit the allegations. There's no allegations that they initially sued the wrong defendant on the claims against us, and there's no allegation that we undertook any inequitable conduct to actually conceal the cause of action itself. Concealment of an identity, even if that did occur, isn't enough. We had to have concealed the cause of action, and there's no claim that we did so. I think our briefs adequately outline the remainder of the law on this. I don't want to speak any more than I have to and waste the Court's time, but if there are any questions, I'm happy to take them. Thank you, sir. Thank you, Your Honor. Mr. Pitman, you have five minutes on rebuttal. Just to clear up a few points, Your Honors, contrary to what Appellee's attorney said, none of their experts testified about future medical expenses, not one. As a matter of fact, Dr. McMaster and his— hadn't they, some of them at least, testified that she had reached full medical recovery? In other words, she was not receiving any additional treatment. No, they did not. As a matter of fact— Then I came here because counsel said, read the comments of one of the doctors saying that no medical treatment had been sought in two years or something. And that was another one of the misrepresentations that was made at trial. Well, tell us what the truth is. So that the misrepresentation — and, again, I have 20 misrepresentations that were made at trial, but that particular one was there was a misrepresentation that she wasn't receiving treatment, the length of treatment. They falsely stated that she had not received treatment from a doctor since 2014. That's in the record on page 3420. But the evidence demonstrated in the record on page 3367 that she was being treated in 2015 and 2016. So that was another misrepresentation. They misrepresented that she had an alleged preexisting injury, which she did not. I'm sure you covered that in your closing argument, didn't you? Absolutely, Your Honor. All right. We covered all of it. But, again, we're having to try two cases here. We had to try the case of her injuries and her medical expenses, and we had to try the case of whether the attorneys were misrepresenting things about her expenses or her treatment. And getting back to their experts, Dr. McMaster, as a matter of fact, he specifically said that all of the services provided to her, and he included Dr. Nosnik and Dr. Willis, two of the gentlemen who gave testimony about future medical expenses, he said it was all reasonable and necessary. He only had a problem with the cost, the billing of it, whether it should have been $500 for some treatment or $400. But he said it was all reasonable and necessary. He didn't tell us about future treatment. Correct. They didn't give any testimony on future treatment. So the treatment that Dr. Nosnik and Dr. Willis gave her was preparing her for her future treatment. She was supposed to see Dr. Willis again, but because of insurance issues, they were not willing to pay the cost for her. The treatment was $20,000 a year for her pain injections. And again, Dr. Price testified. He's another one of their experts. He said he saw absolutely no evidence that she was faking or exaggerating her injuries. So not only did he not testify that there were no or he didn't testify about future medical expenses, he said he didn't see anything exaggerating her injuries that Dr. Nosnik and Dr. Willis testified about. But they did cross as to whether or not she needed those future. And they both stood firm and then said in all medical probability. And, again, they tried everything. They tried to argue that she had a preexisting injury. They told one of the doctors, well, yeah, but you don't know if that was from a preexisting injury or not when she didn't have a preexisting injury. So under Roman v. West Manufacturing, that the court should allow an increase of the jury's award for the uncontested amount of the damages. Dr. Price also testified that he didn't examine or treat Ms. Parker, and if he had, his opinion might change. He was the guy who talked about whether she suffered from depression or not, and, again, had nothing to do with her future medical expenses. He said whether he thought she was depressed or not and that he had treated her, he might have changed his opinion. Your Honor, you had a question about the separate jury instructions. The plaintiff on three different occasions submitted to the judge that there should be separate jury instructions. They reiterated it after the judge came back with his charge. And that's on the record on page 2162, 2618, and 2723, which are the objections and the submission. Before the jury was discharged, I think Judge Stickney was there instead of Judge Fish. Correct. Nonetheless, it still could have been done. Before the jury was discharged, did you say, Your Honor, the damages are not in line with all the elements. We need to get the additional questions answered about the damages because I think they forgot to award for future medical. Did you do anything to keep the jury from being released so you could get the information? I'm not saying that that was necessarily a requirement, but it could have been a last-ditch effort to bring this to the judge's attention. And we did not. After, you know, pursuant to the procedures, after the final submission of the jury charge, we objected to it, and we submitted based on that. And finally, under Rule 50, Your Honor had a question about whether we waived the right. Again, under the plain error, even if you believe that we waived the right, even under plain error, there was absolutely nothing. But if you waive it, it's not even considered. Well, it — You don't look at plain error if you've waived something. Well, if we didn't meet the technical compliance, this Court can look at, and this is Flowers v. South Regional Physician Service 247F3-229. It says that you can look at whether there was any evidence to support the jury verdict. And again, there was no evidence that there were no future medical expenses. So therefore, there was no evidence. So even under plain error review, the Court should grant judgment for the future medical expenses. Thank you, Your Honor. Thank you, sir.